IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ENRIQUE S. GARCIA,

    Plaintiff,

v.                                                                                                              No. CV 17-567 CG

NANCY A. BERRYHILL,
Acting Commissioner of Social Security
Administration,

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Plaintiff Enrique S. Garcia's *Motion to Reverse and Remand for Rehearing, With Supporting Memorandum* (the "Motion"), (Doc. 17), filed November 16, 2017; Defendant Commissioner Nancy A. Berryhill's *Brief in Response to Plaintiff's Motion to Reverse and Remand the Agency's Administrative Decision* (the "Response"), (Doc. 19), filed December 22, 2017; and Ms. Garcia's *Reply to the Commissioner's Brief in Response to Plaintiff's Motion to Reverse and Remand* (the "Reply"), (Doc. 20), filed January 29, 2018.[1]

Ms. Garcia filed applications for supplemental security income and disability insurance benefits on December 3, 2012, alleging disability beginning January 1, 2008. (Administrative Record "AR" 14). Ms. Garcia claimed she was limited in her ability to work due to: anxiety, depression, mood swings, asthma, leg pain, mobility problems, right wrist pain and weakness, high blood pressure, and dyslexia. (AR 236). Ms. Garcia later amended her alleged onset date to January 1, 2011. (AR 14). Ms. Garcia's applications were denied initially on May 16, 2013, and upon reconsideration on

---

[1] As noted in the Motion, Enrique Garcia identifies as a transgender woman, so she will be referred to with female pronouns and prefixes. (Doc. 17 at 2, n.2).

October 28, 2013. (AR 14). Ms. Garcia requested a hearing before an Administrative Law Judge ("ALJ"), which was held on February 25, 2016, before ALJ Lillian Richter. (AR 33). Ms. Garcia and Mary Weber, an impartial vocational expert ("VE"), testified at the hearing, and Ms. Garcia was represented by attorney Michelle Baca. (AR 33-76).

On May 26, 2016, the ALJ issued her decision, finding Ms. Garcia not disabled at any time between her alleged disability onset date through the date of the decision. (AR 27). Ms. Garcia requested review by the Appeals Council, (AR 9), which was denied, (AR 1-5), making the ALJ's decision the Commissioner's final decision for purposes of this appeal.

Ms. Garcia, who is now represented by attorney Francesca MacDowell, argues in her Motion that the ALJ: (1) failed to properly consider evidence regarding her physical impairments; (2) failed to properly consider evidence regarding her mental functioning; (3) erred in considering her credibility; and (4) failed to properly consider the VE's testimony. (Doc. 17 at 5-20). The Court has reviewed the Motion, the Response, the Reply, and the relevant law. Additionally, the Court has meticulously reviewed the administrative record. Because the ALJ erred in her consideration of evidence regarding Ms. Garcia's mental limitations, the Court finds that Ms. Garcia's Motion should be **GRANTED IN PART**.

## I.   Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497-98

(10th Cir. 1992)). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). The Commissioner's "failure to apply the correct legal standards, or show . . . that she has done so, are grounds for reversal." *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996) (citing *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994)). A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for the Commissioner's. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which is generally the ALJ's decision, rather than the Appeals Council's denial of review. *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214; *Doyal*, 331 F.3d at 760. An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting" it. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. While the Court may not re-weigh the evidence or try the issues *de novo*, its examination of the record must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from

3

being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## II. Applicable Law and Sequential Evaluation Process

For purposes of supplemental security income and disability insurance benefits, a claimant establishes a disability when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (2015), 42 U.S.C. § 1382c(a)(3)(A) (2004); 20 C.F.R. §§ 404.1505(a), 416.905(a) (2012). In order to determine whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process ("SEP"). *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920 (2012).

At the first four steps of the SEP, the claimant bears the burden of showing: (1) she is not engaged in "substantial gainful activity"; (2) she has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and either (3) her impairment(s) either meet or equal one of the "Listings"[2] of presumptively disabling impairments; or (4) she is unable to perform her "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *see Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). If the ALJ determines the claimant cannot engage in past relevant work, the ALJ will proceed to step five of the evaluation process. At step five the Commissioner must show the claimant is able to perform other work in the national economy, considering the

---

[2] 20 C.F.R. pt. 404, subpt. P, app. 1.

4

claimant's residual functional capacity ("RFC"), age, education, and work experience. *Grogan*, 399 F.3d at 1261.

### III. Background

Ms. Garcia claimed she was limited in her ability to work due to: anxiety, depression, mood swings, asthma, leg pain, mobility problems, right wrist pain and weakness, high blood pressure, and dyslexia. (AR 236). At step one, the ALJ determined Ms. Garcia had not engaged in substantial gainful activity since January 11, 2011, the alleged onset date. (AR 16). At step two, the ALJ found that Ms. Garcia has the following severe impairments: hypertension; "coronary artery disease status post left anterior descending drug-eluting stent placement;" acute anterior myocardial infarction; hyperlipidemia; esophageal reflux disease; obesity; anxiety disorder, not otherwise specified; and depressive disorder, not otherwise specified. *Id.* At step three, the ALJ determined that none of Ms. Garcia's impairments, solely or in combination, equaled one of the listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926. (AR 16-18).

At step four, the ALJ found that Ms. Garcia has the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(a), 416.967(a), with the limitations that Ms. Garcia can: lift, carry, push and pull 20 pounds occasionally and 10 pounds frequently; sit, stand, and/or walk for six hours in an eight-hour workday; occasionally stoop; and frequently kneel, crouch, crawl, and climb ramps and stairs. (AR 18). Additionally, the ALJ found Ms. Garcia: can never climb ladders, ropes, or scaffolds; should avoid exposure to unprotected heights, moving mechanical parts, extreme heat, extreme cold, dust, odors, fumes, and pulmonary irritants; cannot operate a motor vehicle; is limited to

5

simple, routine work that is performed indoors; cannot perform work at production pace, but can meet end of day goals; is limited to occasional contact with coworkers and members of the public; and is limited to work that does not require close proximity to others in order to avoid distraction. *Id.*

In formulating Ms. Garcia's RFC, the ALJ stated that she considered Ms. Garcia's symptoms and the extent to which those symptoms can reasonably be accepted as consistent with objective medical and other evidence, as required by 20 C.F.R. §§ 404.1529 and 416.929, and Social Security Rulings ("SSR") 96-4p and 96-7p. *Id.* The ALJ also stated that she considered opinion evidence in accordance with the requirements of 20 C.F.R. §§ 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p. *Id.* The ALJ found that Ms. Garcia's statements concerning the intensity, persistence and limiting effects of her symptoms are not entirely consistent with the evidence in the record. (AR 19).

Turning to the medical evidence in the record, the ALJ assigned some weight to the opinion of consultative psychologist, Deborah Kos, Psy.D., stating that Dr. Kos "did not take into consideration [Ms. Garcia's] subjective complaints, which indicate that [Ms. Garcia] has more limitations on social functioning." (AR 25). The ALJ also assigned some weight to the opinion of consultative physician, Sophia Skinner, M.D., because "it appears that she neither factored in [Ms. Garcia's] subjective complaints nor her medical history." *Id.* Next, the ALJ assigned some weight to the opinions of state agency psychiatric consultant, Charles Mellon, M.D., and state agency psychological consultant, Charles F. Bridges, Ph.D., stating that "the medical evidence of record clearly demonstrates that [Ms. Garcia] is more limited in her mental functioning than

6

they assessed." *Id.* Finally, the ALJ assigned little weight to the opinions of state agency medical consultants Kenneth Glass, M.D., and Bonnie Lammers, M.D., because "they are not consistent with the medical evidence of the record." *Id.*

The ALJ found that Ms. Garcia is unable to perform any of her past relevant work, so the ALJ proceeded to step five. (AR 25-26). At step five, the ALJ noted that Ms. Garcia was 48 years old on the alleged disability onset date, which is defined as "a younger individual" in accordance with the Regulations, and that on November 1, 2012, Ms. Garcia turned 50, which is defined as "an individual closely approaching advanced age." (AR 26). The ALJ also determined that Ms. Garcia has a limited education and is able to communicate in English. *Id.* The ALJ noted that the VE testified at the hearing that an individual with Ms. Garcia's same age, education, work experience, and RFC could perform the jobs of cleaner polisher, mail sorter, and warehouse checker. (AR 26-27). After finding the VE's testimony consistent with the Dictionary of Occupational Titles, the ALJ adopted the VE's testimony and concluded that, because Ms. Garcia is capable of performing work existing in significant numbers in the national economy, she is not disabled pursuant to 20 C.F.R. §§ 404.1520(g) and 416.920(g). (AR 27).

**IV.    Analysis**

*A. Consideration of Evidence Regarding Ms. Garcia's Physical Limitations*

Ms. Garcia first contends that the ALJ failed to properly assess evidence regarding her physical limitations. (Doc. 17 at 5-9). Specifically, Ms. Garcia contends she is unable to perform six hours of walking or standing because of her fatigue, shortness of breath, and leg and foot pain. *Id.* at 5-8. Ms. Garcia states the ALJ engaged in a selective review of the evidence and failed to consider evidence of Ms.

7

Garcia's fatigue and lack of energy. *Id.* at 8-9. In addition, Ms. Garcia states the ALJ erred by failing to evaluate how Ms. Garcia's use of a cane affects her ability to walk, stand, and carry. *Id.* at 9.

In response, the Commissioner argues the ALJ properly found that Ms. Garcia is capable of performing light work with up to six hours of standing, walking, or sitting per eight-hour day because no medical provider imposed greater limitations on Ms. Garcia. (Doc. 19 at 13). As for Ms. Garcia's use of a cane, the Commissioner states that she was not medically prescribed a cane, and that the evidence shows that Ms. Garcia had a normal gait and stance and could balance without the use of a cane. *Id.* at 13-14.

In her reply, Ms. Garcia maintains that the ALJ erred by relying on Ms. Garcia's daily activities and the lack of a medical opinion regarding her ability to perform light work. (Doc. 20 at 1-2). She further alleges that evidence in the record regarding her difficulty walking from fatigue, dizziness, and ankle and leg pain refutes the ALJ's finding. *Id.* at 2.

A claimant's RFC is based on how the claimant's physical and mental limitations affect the claimant's ability to work, and is "the most [a claimant] can still do despite [those] limitations." 20 C.F.R. §§ 404.1545, 416.945; *see also* SSR 96-8p, 1996 WL 374184 at *2 ("RFC is what an individual can still do despite his or her limitations."). The ALJ must base the RFC assessment on all of the relevant evidence in the record, such as medical history, laboratory findings, effects of treatment and symptoms, including pain, reports of daily activities, lay evidence, recorded observations, medical source statements, evidence from attempts to work, need for a structured living environment, and work evaluations, if any. SSR 96-8p at *5. "The RFC assessment must include a

narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* at *7. The ALJ "must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved," and the RFC assessment must always consider and address medical source opinions. *Id.*

Ms. Garcia contends that, in finding that she can stand or walk for six hours in an eight-hour workday, the ALJ failed to consider the limiting effects of her fatigue, shortness of breath, leg and ankle pain, and need to use a cane, and, instead, relied on Ms. Garcia's reports of her daily activities. *Id.* at 8-9. To the contrary, the ALJ expressly considered medical evidence regarding Ms. Garcia's fatigue, shortness of breath, and leg and ankle pain, and concluded that these allegations did not support a more limited RFC. For example, the ALJ noted that on April 27, 2013, Ms. Garcia complained to Dr. Skinner of bilateral leg pain, decreased mobility, and low back pain. (AR 19). However, the ALJ further noted that Dr. Skinner found that Ms. Garcia: ambulated without difficulty; was able to get on and off the exam table and out of the chair without difficulty; exhibited a normal gait without an assistive device; had a normal range of motion of the hips, knees, and ankles; and was able to walk on heels and toes, squat, and perform heel-to-toe walking. *Id.* The ALJ reasoned that, while Dr. Skinner found that Ms. Garcia's hypertension was uncontrolled, he "did not restrict [Ms. Garcia's] activities in any way." *Id.*

In addition, the ALJ considered medical evidence from St. Luke's Healthcare Clinic from between May 16, 2013 through April 21, 2014. (AR 20). The ALJ again

9

reasoned that, while Ms. Garcia complained of bilateral ankle pain, shortness of breath, wheezing, and chest pain episodes, Ms. Garcia's activities were not restricted in any way. *Id.* Similarly, the ALJ reviewed records from La Clinica de Familia from April 1, 2014 through June 17, 2015, which showed that Ms. Garcia complained of bilateral shin pain and fatigue. *Id.* However, the ALJ noted that, despite these complaints, Ms. Garcia's physical examinations were normal aside from occasional high blood pressure, she was in no acute distress, she had normal balance, gait, and stance, and her activities were not restricted in any way. (AR 20-21).

Upon consideration of this evidence, the ALJ reasoned that the medical evidence does not support Ms. Garcia's allegations of disabling symptoms and limitations because it shows that her "treatment has remained routine and conservative in nature," and that her "alleged disabling impairments have responded generally well to the medical treatment she has received." (AR 23). Because the ALJ considered the medical evidence and explained how she resolved inconsistencies and ambiguities, the Court finds that Ms. Garcia's allegation that the ALJ did not consider evidence of her fatigue, shortness of breath, and leg and ankle pain is not supported by the record. Even if the Court might make different conclusions based on this evidence, the Court may not re-weigh the evidence or substitute its judgment for the Commissioner's. *See Langley*, 373 F.3d at 1118; *see also Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) ("The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence."). Therefore, the Court finds that the ALJ did not err in her consideration of evidence regarding Ms. Garcia's fatigue, shortness of breath, and leg and ankle pain.

Ms. Garcia also contends the ALJ erred by failing to consider her use of a cane and how it affects her ability to walk, stand, and carry. (Doc. 17 at 9). Ms. Garcia cites to two instances in the record in support of this argument: (1) Ms. Garcia's request for a cane at a doctor's appointment in February 2014 (AR 558, 560); and (2) a mental health treatment record a few weeks later noting that Ms. Garcia was using a cane (AR 598). *Id.* In addition, Ms. Garcia relies on *Jones v. Astrue*, 310 Fed. Appx. 286 (10th Cir. 2009) (unpublished), for this contention. In *Jones*, the Tenth Circuit considered whether the ALJ erred by applying the Medical-Vocational Guidelines (the "grids") when the claimant had been prescribed the use of a cane. 310 Fed. Appx. at 290. The Tenth Circuit explained that the use of the grids is precluded "if a claimant has nonexertional limitations that significantly limit his ability to perform the full range of work in a particular RFC category on a sustained basis." *Id.* (quoting *Williams v. Bowen*, 844 F.2d 748, 752 (10th Cir. 1988)).

Here, however, Ms. Garcia has never been prescribed a cane, and the ALJ did not use the grids in finding that Ms. Garcia was not disabled. Moreover, in determining Ms. Garcia's RFC, the ALJ relied on evidence showing that she had a normal gait, stance, and balance without the use of a cane. (AR 19-20) (relying on Dr. Skinner's findings and records from La Clinica de Familia). Because the ALJ's findings regarding Ms. Garcia's abilities to walk, stand, and carry are supported by substantial evidence, and the ALJ did not apply an incorrect legal standard in reaching her decision, the Court finds that the ALJ did not err by failing to consider Ms. Garcia's use of a cane.

### B. Consideration of Ms. Garcia's Mental Limitations

Next, Ms. Garcia contends the ALJ erred in her consideration of the opinions of independent examiner Dr. Kos and State Agency consultants Dr. Mellon and Dr. Bridges, because the ALJ failed to sufficiently explain why she did not incorporate all of their limitations into her RFC determination. (Doc. 17 at 12-16). In response, the Commissioner contends the ALJ provided sufficient support for discounting these doctors' opinions. (Doc. 19 at 14-15).

Social Security Regulations require ALJs to evaluate every medical opinion in the record, including the opinions of non-examining State Agency physicians. *See* 20 C.F.R. §§ 404.1527(b)-(c), 416.927(b)-(c); SSR 96-6p, 1996 WL 374180. Every medical source opinion should be weighed by the ALJ in consideration of the following applicable "deference factors":

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003) (citation omitted); *see also* 20 C.F.R. §§ 404.1527(c)-(d), 416.927(c)-(d). Ultimately, the ALJ must give good reasons that are "sufficiently specific to [be] clear to any subsequent reviewers" for the weight that she ultimately assigns the opinions. *Langley*, 373 F.3d at 1119 (citation omitted). Failure to do so constitutes legal error. *See Kerwin v. Astrue*, 244 Fed. Appx. 880, 884 (10th Cir. 2007) (unpublished).

In addition, "[a]n ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) (citations omitted). Instead, an ALJ "must . . . explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." SSR 96-8p, 1996 WL 374184, at *7. Further, the Commissioner may not rationalize the ALJ's decision post hoc, and "[j]udicial review is limited to the reasons stated in the ALJ's decision." *Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008) (citation omitted).

   *1. Dr. Kos's Opinions*

Dr. Kos performed a consultative evaluation of Ms. Garcia on April 11, 2013. (AR 406-10). Dr. Kos diagnosed Ms. Garcia with anxiety disorder and depressive disorder, and assigned her with a global assessment of functioning ("GAF") score of 55, which indicates moderate difficulties in social, occupational, or school functioning. (AR 409); DSM-IV-TR at 32. Dr. Kos found that Ms. Garcia's anxiety and depression "seem to interfere with [her] capacity to concentrate, focus and remember data," and recommended a full psychological evaluation. *Id.* Finally, Dr. Kos opined that Ms. Garcia has moderate impairments in sustained concentration and persistence, and limited adaptation ability. *Id.*

The ALJ stated that she gave "some weight" to Dr. Kos's opinions, because "it appears that she did not take into consideration the claimant's subjective complaints, which indicate that the claimant has more limitations on social functioning." (AR 25). Ms. Garcia contends the ALJ's explanation of the weight she assigned to Dr. Kos's opinions is not clear, the ALJ failed to incorporate Dr. Kos's limitations in the RFC finding, and

the ALJ failed to address Dr. Kos's recommendation for a full psychological evaluation. (Doc. 17 at 13-14). The Commissioner responds that the ALJ properly incorporated Dr. Kos's opinions because the ALJ limited Ms. Garcia to simple, routine, or unskilled work. (Doc. 19 at 14-15). The Commissioner further contends the ALJ did not err regarding Dr. Kos's recommendation for a full psychological evaluation because there was sufficient evidence in the record for the ALJ to evaluate Ms. Garcia's mental impairments, such as mental examinations conducted after Dr. Kos's evaluation. *Id.* at 15-16.

The ALJ failed to explain which of Dr. Kos's opinions were given weight and which opinions were discounted. The ALJ implies that she did not give weight to Dr. Kos's findings regarding Ms. Garcia's social functioning, and that the ALJ found Ms. Garcia to be more limited in this area than Dr. Kos did. *See* (AR 25). However, Dr. Kos also found that Ms. Garcia had moderate limitations in her abilities to concentrate, persist, and adapt, and these limitations were not addressed by the ALJ or accounted for in the RFC determination. The ALJ's decision, therefore, it is not sufficiently specific with regard to the weight given to Dr. Kos's opinions, and the Court is unable to meaningfully review the ALJ's findings. *See Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) (holding that "the absence of findings supported by specific weighing of the evidence" in the record leaves the Court unable to assess whether relevant evidence adequately supports the ALJ's conclusion); *see also Haga*, 482 F.3d at 1208 (an ALJ must explain why even moderate limitations are rejected when they conflict with the ALJ's RFC assessment).

The Commissioner contends that the ALJ did not err because she found that Ms. Garcia is capable of performing unskilled work, which primarily involves working with things rather than people. (Doc. 19 at 14-15) (citing 20 C.F.R. pt. 404. subpt. P, app. 2, §§ 201.00(i), 202.00(g)). A limitation to unskilled work does not necessarily address an individual's mental limitations. *Chapo v. Astrue*, 682 F.3d 1285, 1290 n.3 (10th Cir. 2012). Unskilled work "just account[s] for issues of skill transfer, not impairment of mental functions - which 'are not skills but, rather, general prerequisites for most work at any skill level.'" *Chapo*, 682 F.3d at 1290 n.3 (quoting *Wayland v. Chater*, No. 95-7029, 76 F.3d 394, *2 (10th Cir. Feb. 7, 1996) (unpublished)). "[W]hile there may be circumstances in which a particular mental limitation could be so obviously accommodated by a reduction in skill level that particularized vocational evidence addressing that limitation might be dispensed with, that is clearly not the case here." *Wayland*, 76 F.3d at *2. Here, Dr. Kos found that Ms. Garcia is limited in her abilities to concentrate, focus, remember data, persist, and adapt. (AR 409). Absent specific findings from the ALJ or the VE as to these limitations, however, the Court cannot say that limiting Ms. Garcia to unskilled work would accommodate these limitations.

Based on the foregoing, the Court finds that the ALJ failed to give reasons that are "sufficiently specific to [be] clear to any subsequent reviewers" for the weight that she assigned to Dr. Kos's opinions, *Langley*, 373 F.3d at 1119 (citation omitted), and that the ALJ failed to "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved," SSR 96-8p, 1996 WL 374184, at *7. Therefore, the Court finds that the ALJ's findings with regard to Dr. Kos's opinions do not permit meaningful review and that the ALJ failed to follow proper legal

standards. On remand, the Court directs the ALJ to properly consider all of Dr. Kos's findings, including her recommendation for a full psychological evaluation.

2. *Dr. Mellon's and Dr. Bridges' Opinions*

Next, Ms. Garcia contends that the ALJ erred by failing to account for all of the limitations found by non-examining State Agency consultants Dr. Mellon and Dr. Bridges. (Doc. 17 at 14-16). Specifically, Ms. Garcia contends that the ALJ failed to account for Dr. Mellon's and Dr. Bridges' findings that Ms. Garcia is limited in her abilities to complete a normal workday without interruptions from psychologically based symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods. *Id.* at 14. She also contends the ALJ failed to account for Dr. Bridges' findings that Ms. Garcia is limited in her abilities to maintain socially appropriate behavior, and to adhere to basic standards of neatness and cleanliness. *Id.*

In response, the Commissioner states that Dr. Mellon's and Dr. Bridges' findings of moderate limitations were made in the "summary conclusion," or Section I, portion of their assessments. (Doc. 19 at 16). Therefore, the Commissioner argues the ALJ did not err in her consideration of these doctors' opinions because the ALJ relied on the doctors' narrative opinions in Section III of their assessments, which encapsulated the doctors' Section I preliminary findings. *Id.* at 16-17.

In *Carver v. Colvin*, 600 Fed. Appx. 616 (10th Cir. 2015) (unpublished), the Tenth Circuit discussed the difference between Sections I and III of the Mental RFC Assessment. In considering whether the ALJ erred by failing to incorporate all of the Section I limitations in a non-examining State Agency physician's Mental RFC Assessment, the Tenth Circuit explained that Section I "is for recording summary

16

conclusions derived from the evidence in the file and directs that detailed explanation of the degree of limitation for each category is to be recorded in Section III." *Id.* at 618 (quotations and alterations omitted). That language is consistent with the Social Security Administration's Program Operations Manual System ("POMS"), which "provides that Section III of the MRFC, not Section I, is for recording a medical consultant's formal mental RFC assessment, and that adjudicators are to use the Section III narrative as the RFC assessment." *Id.* at 618-19 (discussing POMS DI 25020.010 B.1., POMS DI 24510.060 B.4.a., and POMS DI 24510.065 A.). However, the degree and extent of the capacity or limitation found in Section I must be described in narrative format in Section III, and Section III should "explain the conclusions indicated in [S]ection I, in terms of the extent to which these mental capacities or functions could or could not be performed in work settings." *Id.* at 619 (quoting POMS DI 24510.060 B.4.a. and B.4.b.). The Tenth Circuit observed that if a consultant's "Section III narrative fails to describe the effect that each of the Section I moderate limitations would have on the claimant's ability, or if it contradicts limitations marked in Section I, the MRFCA cannot properly be considered part of the substantial evidence supporting an ALJ's RFC finding." *Id.* (citations omitted).

Here, Dr. Mellon and Dr. Bridges conducted Mental RFC Assessments on May 8, 2013, and October 12, 2013, respectively. (AR 85-87, 108-10). In Section I of the Mental RFC Assessments, they each found that Ms. Garcia is moderately limited in her abilities to: carry out detailed instructions; maintain attention and concentration for extended periods; complete a normal workday and workweek without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable

17

number and length of rest periods; interact appropriately with the general public; and get along with coworkers or peers without distracting them or exhibiting behavioral extremes. *Id.* Additionally, Dr. Bridges found Ms. Garcia moderately limited in her ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness. (AR 110). In Section III of their Mental RFC Assessments, the doctors provided narratives of their findings, and each doctor stated that Ms. Garcia can: understand, remember, and carry out simple instructions; make simple decisions; attend and concentrate for two hours at a time; interact adequately with co-workers and supervisors; and respond appropriately to changes in a routine work setting. (AR 87, 110). In Dr. Bridges' Section III portion, he added that Ms. Garcia "has issues with grooming due to depression." (AR 110).

In the ALJ's decision, she stated she gave some weight to Dr. Mellon's and Dr. Bridges' opinions because "the medical evidence of record clearly demonstrates that the claimant is more limited in her mental functioning than they assessed." (AR 25). Again, the ALJ's failure to specify which opinions were relied on and which were discounted renders the Court unable to meaningfully review the ALJ's findings. Moreover, even though the ALJ implies she discounted these doctors' opinions because Ms. Garcia is more limited than their assessments, the ALJ's RFC determination does not account for all of the moderate limitations found by Dr. Mellon and Dr. Bridges, such as her abilities to: complete a normal workday without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; maintain socially appropriate behavior; and adhere to basic standards of neatness and cleanliness.

In addition, while Dr. Mellon and Dr. Bridges accounted for most of their Section I findings in their Section III narratives, their Section III narratives did not address their findings that Ms. Garcia is moderately limited in her abilities to complete a normal workday without interruptions from psychologically based symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods. Because Dr. Mellon's and Dr. Bridges' Section III narratives do not encapsulate these limitations, the ALJ erred to the extent she relied on their opinions as substantial evidence supporting her RFC determination. *See Carver*, 600 Fed. Appx. at 619 (holding that if a consultant's "Section III narrative fails to describe the effect that each of the Section I moderate limitations would have on the claimant's ability, or if it contradicts limitations marked in Section I, the MRFCA cannot properly be considered part of the substantial evidence supporting an ALJ's RFC finding").

Based on the foregoing, the Court finds the ALJ erred by failing to specify which of Dr. Mellon's and Dr. Bridges' opinions she relied on and which she discounted, and by failing to incorporate all of their limitations in the RFC determination without explaining why they were rejected. In addition, the ALJ's reliance on these doctors' opinions was in error because they did not include all of their Section I limitations in their Section III narratives.

## V. Conclusion

For the foregoing reasons, the Court finds that the ALJ failed to properly consider the opinions of Dr. Kos, Dr. Mellon, and Dr. Bridges. The Court does not address Ms. Garcia's remaining claims because those claims may become moot upon remand.

**IT IS THEREFORE ORDERED** that Ms. Garcia's *Motion to Reverse and Remand for Rehearing, With Supporting Memorandum*, (Doc. 17), is **GRANTED IN PART**.

_____
THE HONORABLE CARMEN E. GARZA
CHIEF UNITED STATES MAGISTRATE JUDGE